IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 3:15-00068 |
| WASCO, INC. and ) | Case No. 3:15-00069 |
| LOVELL'S MASONRY, INC., ) | Chapter 11 |
| ) | Judge Lundin |
| Debtors. ) | Joint Admin. Requested |

**EXPEDITED MOTION PURSUANT TO 11 U.S.C. §§ 363 AND/OR 364 FOR INTERIM AND FINAL ORDERS AUTHORIZING (I) DEBTOR-IN-POSSESSION FINANCING AND/OR (II) LIMITED USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

Debtors WASCO, Inc. ("WASCO") and Lovell's Masonry, Inc. ("Lovell's, collectively with WASCO, the "Debtors") hereby file this expedited motion (the "Motion") requesting entry of an order authorizing Debtors to obtain financing and other extensions of credit from Kingston Capital LLC ("Kingston")(as post-petition lender, the "DIP Lender"), grant security interests and liens and accord super-priority claim status in favor of DIP Lender pursuant to Sections 361, 364(c) and 364(d)(1) of Title 11 of the United States Code (the "Bankruptcy Code") and giving notice of a final hearing pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). In support of their request for expedited relief, the Debtors rely on their Expedited Motion to Set Emergency Hearing on First Day Motions and the Declaration of William. A. Sneed, Jr. in Support of First Day Motions (the "Sneed Declaration"), filed concurrently with this Motion. In further support of this Motion, Debtors state as follows:

**COMPLIANCE WITH LBR 2081-1(f)**

**PURSUANT TO LBR 2081-1(F), NOTICE IS HEREBY GIVEN** that, in this Motion, Debtors (i) propose to grant a post-petition lien and security interest and super-priority

administrative claim to its prepetition lender, Kingston (discussed in numbered paragraph 23 below); (ii) stipulates to the validity of Kingston's pre-petition liens and security interests and provides for a release of claims, although other parties in interests are provided an opportunity until forty-five days after entry of a Final Order granting this Motion to contest such validity and release (numbered paragraph 26 below); (iii) authorizes adequate protection payments on pre-petition indebtedness (numbered paragraph 24 below), and, (iv) agreed to a "carve-out" for payment of professional fees and expenses and payment of U.S. Trustee fees (numbered paragraph 27 below).

## RELIEF REQUESTED

1. By this Motion, Debtors request authority to obtain post-petition financing on an interim and final basis and in such amounts as are necessary to, among other things: (i) purchase inventory, materials and supplies; (ii) fund payroll, utilities, and other ongoing working capital, operational and general corporate needs of Debtors; (iii) pay the fees, costs, expenses and disbursements of professionals; and, (iv) pay bankruptcy-related charges, including U.S. Trustee fees.

2. Thus, pursuant to the Motion, Debtors seek authority from this Court to obtain such a post-petition secured financing pursuant to Bankruptcy Code § 364(d) from the DIP Lender in an amount up to Two Million Five Hundred Thousand Dollars ($2,500,000). Obtaining secured credit on the terms set forth herein is essential to Debtors' continued business operations.

3. Debtors respectfully request the Court set an immediate hearing on this Motion and the relief requested herein, and, at such hearing, authorize Debtors to obtain the described

post-petition secured financing on an interim basis to avoid irreparable harm to the bankruptcy estate and to Debtors' creditors.

4. Debtors further request that this Court set a final hearing on this Motion and the relief requested herein within such time and on such notice as the Court may direct.

5. The alternative to the requested relief is the cessation of Debtors' operations as a going concern. Once Debtor's operations cease, it would be costly and time-consuming (if not impossible) to restart those operations, which would be fatal to Debtors' reorganization efforts. Emergency consideration of this Motion is therefore requested and is supported by the Sneed Declaration.

**BACKGROUND**

6. On January 6, 2015 (the "Petition Date"), Debtors filed voluntary petitions for relief, thereby commencing these cases under Chapter 11, Title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Middle District of Tennessee (the "Court").

7. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, Debtors are operating their businesses and managing their property as debtors-in-possession. Debtors continue to work on all existing projects on an uninterrupted basis and are prepared to enter contracts for new work in accordance with their past ordinary business practices.

8. No trustee or examiner has been appointed in these cases, and no official committee of creditors or equity interest holders has yet been established.

9. WASCO was founded in 1966 and has since that time been engaged in the commercial masonry business. WASCO's primary office is in Nashville, and it also maintains

an office in Knoxville. Lovell's is a wholly-owned subsidiary of WASCO headquartered in Columbia, Tennessee, that is also engaged in the masonry business.

10. In addition to traditional commercial brick and block work, Debtors specialize in stone, brick pavers, interlocking concrete pavers, segmental retaining walls, precast erection and all types of masonry restoration. Debtors' superintendents have an average of over twenty years' experience in the industry. Although the number of individuals employed by Debtors varies depending on the amount of work in process, Debtors routinely have approximately 300 employees, which they lease through a third party professional employer organization.

11. Debtors have contracts for several on-going projects and expect to obtain contracts for additional work throughout this case. Debtors filed this bankruptcy in order to continue on-going operations on an uninterrupted basis and to develop a long term plan of reorganization to satisfy any withdrawal liability ultimately determined to be owed to the pension plan to which they formerly made contributions. To continue operations during the course of this case, which continued operations are absolutely required to maximize the value of its assets, Debtors must obtain post-petition financing.

12. Prior to the Petition Date, the DIP Lender purchased three loans described below from Pinnacle Bank, summarized as follows (collectively referred to as the "Prepetition First Lien Loans"):

(a) A $400,000.00 revolving line of credit evidenced by an original Promissory Note payable to Pinnacle Bank dated February 27, 2014 (the "Revolving Loan").

(b) An original promissory note and security agreement payable to Greenbank (which later merged into Capital Bank, N.A.) dated October 7, 2009 in the maximum principal amount of $689,000.00 (the "Loan 1431"). The principal amount of the loan was subsequently increased to $782,000.00 and various other changes to terms of the loan were made by Commercial Debt Modification Agreements dated September 14, 2010, September 30, 2010, May 13, 2011, and October 4, 2011.

(c) An original promissory note and security agreement dated October 7, 2009 in the maximum principal amount of $500,000.00 payable to Greenbank (the "1432 Loan"). The terms of the 4132 Loan were subsequently modified by Commercial Debt Modification Agreements dated September 30, 2010, and October 4, 2011.

(d) In consideration of an extension of the maturity date, and as a condition to the DIP Lender agreeing to make the DIP Loan and agreeing to subordinate the obligations described above to the DIP Loan, Borrowers executed an Amended and Restated Promissory Note in the amount of $400,000 to DIP Lender, a Guaranty Agreement for DIP Lender, an Amended and Restated Security Agreement for DIP Lender, First Amendment to Loan Modification and Pledge Agreement and a new Security Agreement in favor of DIP Lender. These documents, the various loan documents described in subparagraphs a-c above, and the documents assigning the Prepetition First Lien Loans first to Pinnacle Bank and then to the DIP Lender, are collectively referred to as the "Prepetition First Lien Loan Documents."

13. As of the Petition Date, the Debtors assert that they were indebted and liable to the DIP Lender, without objection, defense, counterclaim or offset of an kind under the Prepetition First Lien Documents in the amount of no less than $1,311,313, which included interest through January 5, 2105, but did not include costs and any fees and expenses due and owing thereunder (collectively, the "Prepetition First Lien Obligations"). Since the Petition Date, interest, costs, fees, and other amounts have continued to accrue.

14. Prior to the Petition Date, the DIP Lender held a valid, first priority lien (the "Prepetition First Lien") on substantially all of the Debtors' tangible and intangible personal property, including, without limitation, all of Debtors' accounts, inventory, equipment, general intangibles, chattel paper, documents, instruments, investment property, letter-of-credit rights, deposit accounts, customer contracts, and books and records, as the same existed on the Petition Date, together with all cash and non-cash proceeds thereof (being hereinafter referred to as the "Pre-Petition Collateral"). The Prepetition First Lien is subordinate only with respect to the following assets: (i) cash deposits under the control of Fidelity and Deposit Company of Maryland and Archway Insurance Company related to Borrowers' workers compensation

obligations and (ii) the rights of the non-Borrower parties under existing Escrow Agreements related to certain of Borrower's bonded projects (Items (i) and (ii) are collectively referred to hereinafter as the "Permitted Liens").

15. Debtors assert that the Prepetition First Lien Obligations are (i) legal, valid, binding and enforceable against each applicable Debtor and (ii) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. The Debtors assert that they do not have, hereby forever release, and are forever barred from bringing or asserting any claims, counterclaims, causes of action, defense or setoff rights relating to the Prepetition First Lien Obligations, whether arising under the Bankruptcy Code, under applicable non- bankruptcy law or otherwise against any of the DIP Lender and its respective officers, directors, employees, or attorneys.

16. The Debtors also assert that as of the Petition Date, the Prepetition First Lien on the Prepetition Collateral was legal, valid, enforceable, non-avoidable, and duly perfected and are not subject to avoidance, attack, offset, recharacterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise and, as of the Petition Date, the Debtors are not aware of any liens or security interests having priority over the Prepetition First Lien except for the Permitted Liens.

**RELIEF REQUESTED**

17. Debtors seek to incur post-petition debt by borrowing from Kingston post-petition, under the terms and conditions set forth in the DIP Loan Agreement, attached hereto as Exhibit A (the "DIP Financing"). Without the DIP Financing, the Debtors would have difficulty funding the expenses necessary to operate its business, maintain assets, or pay employees,

payroll taxes, insurance, utilities, fuel suppliers and other post-petition vendors, overhead, lease expenses and other expenses required for the reorganization of the Debtors' businesses and to maximize the value of the Debtors' estate. Although Debtors generate significant accounts receivable, the ordinary payment term for Debtor's customers is 30 or more days, during which, absent the DIP Financing, Debtor will not have sufficient cash to fund operations.

18. Debtors also seek to provide replacement liens and adequate protection to the DIP Lender in exchange for its agreement to provide post-petition financing to Debtors and to subordinate its Prepetition First Lien.

19. Attached hereto as <u>Exhibit B</u> is Debtors' cash flow budget for the 13-week period from the Petition Date through April 3, 2015 (the "Budget"). If necessary, Debtors will amend the Budget, subject to the consent of DIP Lender in advance of the final hearing on this Motion and thereafter as required. This Budget reflects, among other things, anticipated receipts, disbursements and cash on hand and will be revised on an on-going basis. The Budget is a projection and is subject to change (with the consent of DIP Lender) based on the amount of credit obtained from vendors, the amount of new business obtained and the level of continued revenues generated.

20. Pursuant to Section 364(a) and 364(b) of the Code, Debtors assert that they have attempted, and are unable, to obtain either unsecured credit or unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense in the amounts and on as favorable terms as are being agreed to by Kingston.

21. DIP Lender has indicated a willingness to extend interim secured post-petition credit to Debtors, but only under the terms and conditions set forth herein and in the DIP Loan Agreement. Debtors believe that, under the circumstances, the terms and conditions provided for

564608-01

7
Case 3:15-bk-00068    Doc 8    Filed 01/06/15    Entered 01/06/15 18:13:09    Desc Main
Document      Page 7 of 16

in this Motion and the DIP Agreement are a fair and reasonable response to Debtors' request for financial assistance.

22. Subject to approval by this Court, the material terms and conditions of the DIP Loan Agreement entered into by Debtor and Lender are as follows:

(a) Debtors may obtain post-petition financing totaling up to $2,500,000. Debtors must comply with the Budget and may only spend in any period up to 105% of the aggregate expenditures provided for in the Budget. Debtors' draws against the DIP Loan will be limited to 75% of the Debtors' outstanding accounts receivable that are less than 90 days old.

(b) The interest rate to be paid on the DIP Financing is 7.25%. The fee for the first $1,750,000.00 of the DIP Financing shall be 4%, payable in full at the time of the first advance. The fee for the remaining balance of the Loan ($750,000) shall be 6%, payable in full at the time of the first advance on that portion of the loan amount.

(c) Payment of the prepetition amounts owed to the DIP Lender shall be primed and be subject to the indefeasible payment in full of the amounts owed for post-petition advances under the DIP Loan Agreement.

(d) As security for Debtors' post-petition obligation under the DIP Loan Agreement, the DIP Lender is granted valid, binding, enforceable, and perfected liens (the "Post-Petition Liens") in substantially all of the Debtors' assets. Notwithstanding. the foregoing provisions of this paragraph or anything to the contrary in the DIP Loan Agreement, the Post-Petition Liens shall not attach to any of the following property: (a) any causes of action, including causes of action or claims pursuant to Sections 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "Avoidance Actions"); and (b) any monies recovered in connection with the successful prosecution or settlement of Avoidance Actions or any other causes of action held by the Debtors' estates. Moreover, DIP Lender's Post-Petition Liens shall be subordinate to the Permitted Liens, as defined in the DIP Loan Agreement.

(e) In addition, the Debtors' obligations under the DIP Loan Agreement and any and all claims of the DIP Lender against the Debtors and creditors arising, as applicable, out of the DIP Loan Agreement, or any provision of the Interim DIP Order or with regard to the liens granted in and to the Post-Petition Collateral shall constitute an allowed super-priority claim (the "Super-Priority Claim") in all of these Chapter 11 Cases in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code with priority over all other administrative expenses in the Debtors' consolidated bankruptcy estate of the kind specified in, or ordered pursuant to, Section 105, 326, 328, 330, 332, 501(a), 503(b), 507(a), 507(b), 552, 726, 1114, or other similar Section of the Bankruptcy Code.

23. As the holder of perfected liens in Debtors' Prepetition Collateral (including Cash Collateral), the DIP Lender is entitled to adequate protection for on account of the granting of the Post-Petition Liens, subordination to the Debtors' obligations under the DIP Loan and the Carve-Out (as defined in the DIP Loan Agreement), Debtors' use of Cash Collateral and any other decline in value arising out of the automatic stay or the Debtors' use, sale, or disposition or other depreciation of the Prepetition Collateral. Debtors' move the Court to grant the DIP Lender adequate protection as follows:

(a) Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the DIP Lender's interests in the Prepetition Collateral of the Debtors, the Debtors seek to grant to the DIP Lender, continuing valid, binding, enforceable, non-avoidable and automatically perfected post-petition security interests in and liens on the Prepetition Collateral and the DIP Collateral (the "Replacement Liens").The Replacement Liens shall be junior only to (i) the Carve-Out; (ii) the Permitted Liens and (iii) the Post-Petition Liens. The Replacement Liens would otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral. Except as provided herein, the Replacement Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases or any successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any successor Cases, or upon the dismissal of any of the Chapter 11 Cases or successor Cases. Subject to entry of the Final DIP Order, the Replacement Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.

(b) As further adequate protection of the DIP Lender's interests in the Prepetition Collateral of the Debtors against any diminution in value of such interests in the Prepetition Collateral of the Debtors, the DIP Lender would be granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any successor Cases (the "Adequate Protection Superpriority Claims"). The Adequate Protection Superpriority Claims shall be junior only to the Carve-Out (as defined below) and the DIP Superpriority Claims. Except as otherwise provided in this Interim DIP Order, the Adequate Protection Superpriority Claims would have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code.

(c) For so long as any Prepetition First Lien Obligations remain outstanding, the Debtors would be authorized and directed to provide adequate protection to the DIP Lender in the form of ongoing payment of the interest payments under the Prepetition First Lien Loan Documents, whether such interest payments were incurred prepetition or post-petition, with all accrued interest payments paid within 7 days after the Petition Date as set forth in the Budget and on a monthly basis in accordance with the Budget thereafter (collectively, the "Adequate Protection Payments"). Notwithstanding the foregoing, to the extent the Court determines, pursuant to sections 506(a) or (b) of the Bankruptcy Code that the Adequate Protection Payments are not properly allocable to interest payments, the Adequate Protection Payments may be recharacterized as payment(s) applied to the principal amount of the Prepetition First Lien Obligations. Also, as adequate protection, Debtors are authorized and directed to pay the DIP Lender's costs and attorney's fees incurred postpetition on a monthly basis.

PARTIES ARE URGED TO READ THE DIP LOAN AGREEMENT IN ITS ENTIRETY; TO THE EXTENT OF ANY INCONSISTENCIES BETWEEN THIS MOTION AND THE DIP LOAN AGREEMENT, THE LOAN AGREEMENT SHALL CONTROL.

24. As a condition to the DIP Financing, Debtors have stipulated as follows:

(a) As of the Petition Date, the Debtors were indebted and liable to the DIP Lender, without objection, defense, counterclaim or offset of an kind under the Prepetition First Lien Documents in the amount of no less than $1,311,313, which included interest through the Petition Date, but did not include costs and any fees and expenses due and owing thereunder (collectively, the "Prepetition First Lien Obligations"). Since the Petition Date, interest, costs, fees, and other amounts have continued to accrue.

(b) Prior to the Petition Date, the DIP Lender held a valid, first priority lien (the "Prepetition First Lien") on all of the assets of the Debtors other than the assets securing the Permitted Liens (collectively, the "Prepetition Collateral").

(c) Pursuant to the Prepetition First Lien Documents, as of the Petition Date, the DIP Lender's right to payment is senior to all other secured creditors with respect to the Prepetition Collateral.

(d) The Prepetition First Lien Obligations are (i) legal, valid, binding and enforceable against each applicable Debtor and (ii) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. The Debtors do not have, hereby forever release, and are forever barred from bringing or asserting any claims, counterclaims, causes of action, defense or setoff rights relating to the Prepetition First Lien Obligations, whether arising under the Bankruptcy Code, under applicable non- bankruptcy law or otherwise against any of the DIP Lender and its respective officers, directors, employees, or attorneys.

(e) As of the Petition Date, the Prepetition First Lien on the Prepetition Collateral was legal, valid, enforceable, non-avoidable, and duly perfected and are not subject to avoidance, attack, offset, recharacterization or subordination under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise and, as of the Petition Date, and without giving effect to this Interim DIP Order, the Debtors are not aware of any liens or security interests having priority over the Prepetition First Lien except for the Permitted Liens. The Prepetition First Lien was granted for fair consideration and reasonably equivalent value.

25. As a further condition to the DIP Financing, DIP Lender requests that these stipulations be binding on creditors and other parties in interest on the following terms:

(a) The stipulations and admissions set forth above and in the proposed Interim DIP Order shall be binding upon all other parties-in-interest, including, without limitation, any Committee appointed by the United States Trustee, any subsequent trustee, responsible person, examiner with expanded powers, and any other Estate representative unless (a) a party-in-interest with standing and requisite authority has timely filed a motion seeking standing to file an adversary proceeding or contested matter or has timely filed an adversary proceeding or contested matter by no later than the date that is the later of (i) (a) 30 days from the date of the selection of counsel for the Committee, (b) if no such committee has been appointed, no later than 45 days (or a longer period as the Court orders for cause shown before the expiration of such period) after the entry of the Final DIP Order, or (c) upon conversion of a chapter 11 case to chapter 7, to the extent that any relevant challenge period has not expired, such period shall be automatically extended for 30 days from the date a chapter 7 trustee is appointed or (ii) such later date as has been agreed to, in writing, by the DIP Lender in its sole discretion (the "Challenge Deadline") (1) challenging the validity, enforceability, priority or extent of the Prepetition First Lien Obligations or the Prepetition First Liens on the Prepetition Collateral or (2) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other any claims, counterclaims or causes of action, objections, contests or defenses that the Debtors' estates may have (collectively, "Claims and Defenses") against the DIP Lender or its affiliates, representatives, attorneys or advisors in connection with matters related to the Prepetition First Lien Loan Documents, the Prepetition First Lien Loan Obligations, or the Prepetition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such adversary proceeding or contested matter filed by the Challenge Deadline; provided, that as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such motion for standing or adversary proceeding or contested matter, as applicable, is filed by the Challenge Deadline: the Prepetition First Lien Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 cases; the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not

subject to recharacterization, subordination, avoidance or reduction, except by payment; and, the Prepetition First Lien Obligations, the Prepetition Liens on the Prepetition Collateral and the DIP Lender shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for the Debtors). If any such motion for standing or adversary proceeding or contested matter, as applicable, is filed by the Challenge Deadline, the stipulations and admissions contained in paragraph O of this Interim DIP Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in this Interim DIP Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition First Liens or the Prepetition First Lien Obligations.

26. The DIP Lender has agreed to a carve out for professional fees, described as follows:

The liens and securities interests granted to the DIP Lender shall be valid, enforceable, and perfected security interests and liens, but shall be subject and subordinate to allowed claims of professionals of the Debtors, provided that in no event shall the aggregate amount of such claims exceed $200,000.00 (the "Carve-Out"). Notwithstanding the foregoing, the Carve-Out shall exclude any fees and expenses incurred in connection with initiating or prosecuting any claims, causes of action, adversary proceedings, or other litigation against the DIP Lender on account of either the Prepetition First Lien or the Post-Petition Lien, including, without limitation, the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (i) invalidating, setting aside, disallowing, avoiding, challenging or subordinating, in whole or in part, (a) the DIP Obligations, (b) the Prepetition First Lien Obligations, (c) the Prepetition First Lien, or (d) the Post-Petition Liens, or (ii) preventing, hindering or delaying, whether directly or indirectly, the DIP Lender's assertion or enforcement of their liens or security interests or realization upon any DIP Collateral or Prepetition Collateral, or (iii) prosecuting any Avoidance Actions against the DIP Lender, or (iv) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the Prepetition First Lien Obligations, or the adequate protection granted herein, or (v) or any other litigation generally against the DIP Lender. Nothing herein shall be construed to obligate the DIP Lender, in any way, to pay any professional fees, or to assure that a Debtor has sufficient funds on hand to pay any professional fees.

27. Debtors assert that these provisions are reasonable and should be approved by the Court.

## SUMMARY OF ARGUMENT

28. Given the high unlikelihood that, based on existing circumstances, Debtors will be unable to obtain financing on an unsecured basis, in the ordinary course of business or otherwise, allowable on par with administrative expense claims as contemplated by § 364(a) and (b), on a priority basis over administrative expenses as contemplated by § 364(c), or upon the grant of a junior lien or a lien on encumbered property of the estate as also contemplated in § 364(c), Debtors are left with no alternative but to seek financing pursuant to § 364(d) and to obtain credit from the DIP Lender secured by a lien on property senior to all prior liens (other than the Permitted Liens), including pre-petition liens of the DIP Lender. Without the DIP Facility, Debtor's estate and the protection and maximization of the value of Debtors' assets will be immediately and irreparably harmed.

## ARGUMENT

**A. Granting the DIP Lender Liens on Collateral to Secure the DIP Facility Is Appropriate.**

29. Generally, courts give broad deference to the business decisions of a debtor in possession. *See, e.g, Richmond Leasing v. Capital Bank*, 762 F.2d 1303, 1309 (5th Cir. 1985). In particular, a bankruptcy court generally will respect a debtor-in-possession's business judgment regarding the need for, and proposed uses of, funds. *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D. N.Y. 1990)(citations omitted).

30. Section 364(d) of the Bankruptcy Code provides:

The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is

subject to a lien only if --(A) the trustee is unable to obtain such credit otherwise; and

      (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1). Thus, the Bankruptcy Code specifically contemplates, under certain circumstances, the "priming" of the lien of a pre-petition secured creditor in favor of a senior lien granted to a provider of post-petition financing. The required circumstances are present in these cases and particularly appropriate where Kingston, as DIP Lender, seeks only to prime the pre-petition liens held by Kingston, as the Pre-Petition Lender. *See generally In re CB Holding Corp.*, 447 B.R. 222 (Bankr. D. Del. 2010)(approving post-petition financing extended by pre-petition lenders); *In re Michael Day Enters.,, Inc.*, Nos. 09-55159, -62, 2009 WL 7195493 (Bankr. N.D. Ohio, Dec. 15, 2009)(approving post-petition extension of credit by pre-petition lenders).

    31.    As stated in the Sneed Declaration, the pension liability facing Debtors, coupled with existing liens on virtually all assets of Debtors make it a practical impossibility for Debtors to obtain financing on any basis other than the granting of priming liens to the DIP Lender for the DIP Financing. Debtors have no significant unencumbered property on which to offer a lien against which a lender will lend. Debtors' explored alternative financing possibilities prior to the filing of these Bankruptcy Cases, and those efforts were unsuccessful. The unavailability of financing on an unsecured or junior priority basis is not a mere opinion, it is the reality.

    32.    Under these circumstances, the grant of a super-priority lien to the DIP Lender to secure the DIP Financing is appropriate, and the other terms of the proposed DIP Financing are reasonable.

### B. Debtors Should be Authorized to Obtain the DIP Loans in Order to Preserve the Value of Its Business and Facilitate Reorganization.

33. As supported by the Sneed Declaration, to preserve the value of its assets, Debtors must have immediate access to advances under the DIP Financing. If the DIP Financing is not immediately approved on an interim basis, Debtors may be forced to terminate their operations, which Debtors believe would be fatal to their reorganization efforts.

34. The DIP Loan Agreement, as well as the terms of the proposed Interim Order, were negotiated in good faith and at arm's length between Debtors and the DIP Lender.

35. Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), Debtors request that the Court hold an interim hearing on an emergency basis to consider authorizing Debtors to obtain, on an interim basis, DIP financing for purposes specified in Debtor's Budget as may be amended with the consent of the DIP Lender.

36. In order to obtain the DIP Financing, under section 363 of the Bankruptcy Code, it is necessary and appropriate that the DIP Lender be granted adequate protection for the use of its Cash Collateral and for its agreement to subordinate its Pre-petition Liens to the Post-Petition Obligations. The adequate protection outlined above and in the proposed interim order is reasonable, necessary and should be approved.

37. Debtors certify that copies of the Motion (together with the Stipulation and proposed Order) will be served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the United States Trustee, secured creditors, the DIP Lender and its counsel, the 20 largest creditors of the Debtors, and the Internal Revenue Service.

WHEREFORE, based on the foregoing, Debtors respectfully request that the Court enter an interim order containing the terms set forth in the proposed order filed herewith

(1) authorizing Debtors to obtain financing and other extensions of credit from DIP Lender, grant security interests and liens and accord super-priority claim status in favor of DIP Lender pursuant to Sections 361, 364(c) and 364(d)(1) of Title 11 of the United States Code (the "Bankruptcy Code"); (2) giving notice of a final hearing pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2); (3) granting DIP adequate protection for the use of Cash Collateral and the subordination of its pre-petition liens; and (4) granting such other relief as may be necessary and appropriate.

Respectfully submitted,

HARWELL HOWARD HYNE
GABBERT & MANNER, P.C.


/s/ Glenn B. Rose
Craig V. Gabbert, Jr.
Glenn B. Rose
Tracy M. Lujan
333 Commerce Street, Suite 1500
Nashville, TN 37201
Phone: (615) 256-0500
Fax:    (615) 251-1059
Email:  cvg, gbr, or tml@h3gm.com

Counsel to Debtors